■ In the Matter of CROWN NURSING HOME, INC., Petitioner, v DAVID AXELROD, as Commissioner of the State of New York Department of Health, et al., Respondents.—Proceedings pursuant to CPLR article 78 to review a determination of the respondents, dated December 29, 1986, which, after a hearing, disapproved the petitioner's application for a license to operate the Crown Nursing Home.

Adjudged that the determination is confirmed and the proceeding is dismissed on the merits, with costs.

The petitioner Crown Nursing Home, Inc., is a New York corporation whose sole shareholders are two brothers, Chaim Teitelbaum and Joshua Teitelbaum. On or about January 5, 1984, the petitioner filed an application with the Public Health Council (hereinafter the PHC) seeking approval for the establishment of a nursing home. On May 6, 1985, the respondent New York State Department of Health issued a report recommending the disapproval of the petitioner's application, and on May 30, 1985, the PHC notified petitioner that it was considering disapproval of its application. Shortly thereafter, the petitioner requested a public hearing. At the hearing which followed, the Teitelbaums represented that they had access to more than $2,200,000 which included, *inter alia,* $500,000 cash on deposit, $99,000 in market securities, $383,000 in mortgage loans, and $350,000 to $375,000 in a line of credit extended by vendors. On cross-examination, Chaim

Teitelbaum acknowledged that only $350,000 of the purported $500,000 of cash on deposit was actually in his name. Although he claimed to have power of attorney over the $150,000 balance, the petitioner failed to introduce any evidence to substantiate that allegation. Furthermore, the respondents' expert fiscal witness, Neil Benjamin, testified that credit extended by vendors was not an acceptable source of working capital because it imposed additional debt on the facility. The record further indicates that the commitment to one of the mortgage loans would be deemed null and void if the closing did not occur within two weeks of the date of the commitment, and that the commitment to the second mortgage loan was not binding unless the petitioner executed its copy of the agreement and paid a deposit and commitment fee to the lender within seven days of the date of commitment. The petitioner failed to establish that it had satisfied any of these conditions.

Public Health Law § 2801-a (3) mandates that an application for the establishment of a nursing home be approved after three criteria are met, namely, that a public need for the institution exists, that the character, competence and standing of the applicants are satisfactory, and that the financial resources and sources of future revenues are satisfactory.

There was substantial evidence presented to indicate inadequate financing in this case (see, Matter of Pell v Board of Educ., 34 NY2d 222). At best, the petitioner showed that the Teitelbaums had under their exclusive control $449,000 in cash deposits plus the initial cash deposit of $100,000. Accordingly, the total amount of funding available to the petitioner fell far short of the facility's initial operating expenses which the PHC determined to be $780,000. Mangano, J. P., Thompson, Bracken and Rosenblatt, JJ., concur.